IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SELDON H. SWARTZ,                          CV 04-3055-BR

          Plaintiff,                       OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

          Defendant.



**ROBERT F. WEBBER**
Black, Chapman, Webber & Stevens
930 W. 8th Street
Medford, OR  97501
(541) 772-9850

          Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**CRAIG J. CASEY**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024

**LUCILLE G. MEIS**
Office of the General Counsel
**STEPHANIE R. MARTZ**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900  M/S 901
Seattle, WA  98104-7075
(206) 615-2272

       Attorneys for Defendant


**BROWN, Judge.**

Plaintiff Seldon H. Swartz brings this action pursuant to § 205(g) of the Social Security Act as amended, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) denying Swartz's application for Social Security disability benefits under Title II of the Act.  Swartz seeks an order reversing the Commissioner's decision and remanding for payment of benefits.

For the reasons that follow, the Court **REVERSES** the Commissioner's final decision and **REMANDS** pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits consistent with this Opinion and Order.


## ADMINISTRATIVE HISTORY

Swartz filed an application for disability benefits on May 6, 1998, alleging disability commencing on February 1, 1995, as a result of back pain.  Tr. 73-75.  His insured status for

disability benefits expired on December 31, 1997. The application was denied initially and on reconsideration. Tr. 51-61. Swartz requested a hearing. Tr. 62-63.

On August 26, 1999, an administrative hearing was held before Administrative Law Judge (ALJ) Sandra Rogers. Tr. 30-45. Swartz, represented by counsel, appeared and testified at the hearing.

On September 16, 1999, ALJ Rogers issued a decision in which she found that prior to December 31, 1997, the date his insured status expired, Swartz retained the residual functional capacity (RFC) to return to the work that he performed in the past. Tr. 19-24. The Appeals Council denied Swartz's request for review. Tr. 6-7. Swartz filed an appeal to the United States District Court for the District of Oregon.

On January 25, 2002, pursuant to the stipulation of the parties, the district court remanded and ordered:

> The ALJ will re-evaluate the following issues: Plaintiff's qualifying past relevant work; the opinion of James E. Dunn II, M.D.; and Plaintiff's credibility. Based on these findings, the ALJ will re-evaluate his findings at step four of the sequential evaluation process and will proceed, if necessary, to step five. If necessary, the ALJ will obtain testimony from a medical expert and a vocational expert.

Tr. 255.

On February 4, 2004, a second administrative hearing was held before ALJ John Madden, Jr. Swartz, represented by counsel,

appeared and testified together with Scott Linder, M.D., a medical expert, and Frances Summers, a vocational expert (VE). Tr. 332-70.

On March 25, 2004, ALJ Madden issued a decision in which he found Swartz was unable to perform any of his past relevant work prior to December 31, 1997, his date last insured, and Swartz retained the RFC to perform sedentary work that allowed for sitting with occasional standing and walking and the opportunity to change position at will. The ALJ found Swartz was not under a disability prior to December 31, 1997, because he was able to perform jobs that existed in significant numbers in the national and regional economy. Tr. 193-203.

Swartz thereafter requested judicial review of the Commissioner's decision to deny him disability benefits.

## BACKGROUND

Swartz was 48 years old on December 31, 1997, when his insured status expired. Swartz has a Master's Degree in health education and worked in the past as an educational director, a pharmaceutical sales representative, and an x-ray technician instructor-technologist. Swartz last worked on February 1, 1995. Swartz asserted in his application that he became disabled on February 1, 1995, due to lumbar disc disease. Counsel for Swartz, however, requested the ALJ at the administrative hearing

held on August 26, 1999, to amend the onset date to July 1, 1997. Tr. 33.

Swartz injured his back while working for the Department of Forestry in 1977 and filed a claim for workers' compensation as a result of that injury. Diagnostic studies showed a ruptured disc. After a period of conservative treatment, Swartz underwent surgery. After the surgery, Swartz received retraining from the workers' compensation program and returned to work teaching x-ray technology. Swartz continued to work at a variety of jobs. In 1988, Swartz left his job as a pharmaceutical sales representa- tive because the long-distance driving aggravated his back problems. Swartz worked as an educational director for a Bend health-education system from October 1993 until February 1995.

## 1. **Medical Evidence**

On March 14, 1990, Swartz began seeing Paul Altrocchi, M.D., for a medical update as a result of a disability insurance request. Dr. Altrocchi determined Swartz had a "[h]erniated disc at L.5-S.1 on the right in 1977" and "[c]hronic back and right leg pain due to mechanical problems including posterior rotation of the right innominate and associated vertebral rotational abnormalities." Tr. 177. Dr. Altrocchi referred Swartz to a chiropractor and noted steady improvement until progress became marginal in January 1991, at which time he declared Swartz

"medically stationary" in response to a request for vocational rehabilitation.  Tr. 171.

On April 3, 1995, Swartz received a neurological evaluation from Norwyn Newby, M.D., on a referral from Dr. Altrocchi. Tr. 127-29.  Dr. Newby noted a "[h]istory of a lumbar discectomy at L5-S1 with ongoing low back and right leg symptoms."  Tr. 127. Dr. Newby noted Swartz had been working at a health-education center until services were consolidated and the center "was unable to modify his work to exclude long term driving so his position has been terminated."  Tr. 128.  Dr. Newby reported Swartz's "discomfort in general is made worse by standing or sitting for a long period of time with his right leg extended and improves with sitting with his knee bent."  Tr. 128.  Dr. Newby commented, "It is our opinion that Mr. Swartz would have a difficult time continuing in his job at AHEC given the new schedule and the more frequent driving."  Tr. 129.

On February 1, 1996, Swartz returned to Dr. Newby "mostly for an administrative problem . . . trying to reopen his claim and through this get some compensation, retraining and aid in finding a new job. . . .  Certainly his examination has not worsened."  Tr. 126.

On January 13, 1997, Dr. Newby reported, "Swartz returns for follow-up.  Last week he had an acute worsening of his low back pain and some right buttock and right posterior thigh discomfort.

He has been at bed rest and comes in today stating he is feeling much better."  Dr. Newby prescribed physical therapy.  Tr. 125.

On February 11, 1997, Swartz returned to Dr. Newby for a follow-up.  Dr. Newby noted:

> He has some confusion as to what his limitations are.
>
> Presently, I believe he can be involved in medium work activity with no lifting over 50 lbs.  I think he needs to be in a job position that allows for changing of positions between standing, sitting and walking.  I would recommend that if he is involved in driving, that the driving be limited to two hours at one time with a half-hour interruption before starting to drive once again.

Tr. 124.

On October 7, 1997, Swartz was examined by James Dunn II, M.D., at the Pacific Spine and Pain Center for continuing pain in his back and down his right leg.  Swartz was last seen by Dr. Dunn at the Pain Center in 1999.  Range of motion studies showed limitation in lateral bending and extension with normal forward bending, but mild to moderate spasm on recovery from forward bending.  Dr. Dunn noted "[Swartz] did have an extremely sedentary job for about a two year period from 1993 to 1995.  He has tried since that time to find a comparable sedentary job, but is unable to do so."  Tr. 137.  Dr. Dunn ordered a Physical Capacity Evaluation (PCE).  Tr. 138.

The PCE was conducted on October 28, 1997, by a physical therapist at the Pain Center.  The physical therapist reported,

"I do not feel it is appropriate for [Swartz] to lift even light weight on a frequent basis." Tr. 135. The physical therapist noted:

> The patient feels a 5 hour day would be the maximum number of hours he could tolerate. He has reportedly spent extensive time job searching albeit in vain. [Swartz] demonstrated full and consistent effort throughout the PCE and seems motivated to work when an appropriate position is found. He will require a job that will allow him to dictate his activities to a large degree. In this way he will be able to maintain his symptoms at a tolerable level.

Tr. 136.

Dr. Dunn reported the radiology report dated November 13, 1997, showed narrowing of the lumbosacral disc space of about fifty percent, overriding of the facets and sclerosis at the lumbosacral level, and "progressive degenerative changes." Tr. 140. Dr. Dunn also noted Swartz's "PCE gave him a 15-20 pound lifting limit with about 5 hours of continuous work." Tr. 133.

On March 12, 1998, David Hagie, D.O., a physician at the Pain Center, reported Swartz was "having a flare-up of his long-standing right sciatic pain in the past approximately one month . . . . He is currently having an exacerbation or flare-up of his right sciatic pain through the buttock and thigh, down to the calf, and giving his foot a sensation of being squeezed in a vice." Tr. 133.

Dr. Hagie prescribed physical therapy to include traction, massage, physical therapy modalities, and stabilization. Tr. 132.

On March 25, 1998, Swartz received an injection of steroids at L5-S1 at the Pain Center as recommended by Dr. Dunn. An MRI was ordered to determine whether Swartz could have recurrent disc herniation. Tr. 131.

On April 17, 1998, Seth Hofstetter, M.D., a physician at Southern Oregon Imaging, reported regarding a lumbar spine MRI that "L5-S1 level does demonstrate extensive perineural fibrosis on the right causing mass effect upon the thecal sac and surrounding descending S-1 nerve rootlet. In addition, there is bulging of disk contents seen right lateral into the neural foramen . . . ." Tr. 139.

On April 21, 1998, Dr. Dunn reported:

> [Swartz's] MRI shows extensive epidural fibrosis with a lateral bulge of his anulus, closing off his foramen. There is definite evidence of progression.
>
> I reviewed a letter from Dr. Newby in Bend, Oregon where he gave the patient a 50 pound lifting limit in 2/97. I would totally disagree with that. He should have a sedentary work position with a lifting limit of essentially not over 10 pounds. The most he could work at this time would be on a very part-time basis, maybe 15-20 hours a week. That may improve with the use of another epidural or two, though it is not anticipated that his condition will improve in general. It is anticipated that it will worsen and will probably necessitate decompressive surgery. . . .

*  *  *

          <u>Plan</u>:  He is to have a caudal epidural and I will
          see him back in 2 months.  He is to continue his
          massage twice a week and should get home traction
          because it is beneficial to him.

Tr. 131.

          On June 30, 1998, Dr. Dunn wrote:

          To Whom It may Concern

                              *  *  *

          [Swartz] has been our patient since 1988.  He did
          reasonably well up until I saw him on 10/7/97.
          Since that point, he has been unable to be
          employed because of the persistence of his pain
          and aggravation of it by any type of employment.

          When I saw the patient at that time, he had tried
          working sedentary jobs for about a two year period
          and progressively worsened even doing that.  He
          currently is being considered for a lumbar fusion.

Tr. 160.

          Between June 1998 and December 1998, Swartz continued to see

Dr. Dunn and his associates at the Pain Center for persistent

back and leg pain.  Swartz was evaluated by Antonio Zelaya, M.D.,

an associate of Dr. Dunn, and further surgery was recommended.

Tr. 158-59.

          In response to a request by counsel for Swartz on

February 2, 1999, Dr. Zelaya opined Swartz was severely limited

in his ability to be employed since October 7, 1997, based on a

progressive worsening of his condition, and Swartz would be

10 - OPINION AND ORDER

absent from work for 5-10 days a month due to his chronic pain and muscle spasms.  Tr. 161-62.

Between January 1999 and April 2002, Swartz saw Dr. Dunn or his associates at the Pain Center at least eight times for low-back and leg pain.  Vicodin was prescribed.  Tr. 312-18.  On January 21, 1999, Dr. Hagie diagnosed post-laminectomy syndrome and epidural fibrosis.  Dr. Dunn recommended another surgical procedure, but it was not approved by workers' compensation.  Swartz continued to have "pretty much the same . . . persistent pain."  Tr. 312.

After Dr. Dunn retired, Swartz continued to see Dr. Dunn's associates at the Pain Center between April 2002 and February 2003.  Tr. 301-13.  On January 22, 2003, Paul Amstutz, M.D., noted, "It is my impression that [Swartz] likely has a recurrent disk herniation in the midst of scar tissue that is very difficult to distinguish one from the other on the basis of MRI scan.  Abrupt return of his symptoms is very strongly suggestive of this."  Tr. 309.  Swartz received epidural steroid injections at the Pain Center on July 31, 2002; January 31, 2003; and February 26, 2003.  Tr. 311, 306, 301.

An MRI in April 2003 was interpreted by Jeffrey Louie, M.D., as showing "scar tissue right 5-1 [and] [a] small disk fragment cannot be excluded."  Tr. 326.  Dr. Louie did not recommend further surgery due to negative mechanical stretch signs, but he

recommended continued treatment with Neurontin with occasional epidural steroid injections as needed for pain.  Tr. 326.

On January 28, 2004, Dr. Dunn confirmed his opinion through a letter prepared by counsel for Swartz as follows:

> Swartz would be limited to the restrictions set forth in the PCE of October 28, 1997, which was a subsedentary level on a part time basis . . . a work schedule which allowed him to alternate between sitting and standing and to lie down periodically during the day to reduce his level of pain. . . .  Swartz would miss 5-10 days per month due to his chronic pain.

Tr. 328.

## 2. <u>Administrative Hearing on August 26, 1999</u>

Swartz testified he last worked in January 1995 as the education director for a Bend area health-education system and stated the job "didn't entail too much."  Tr. 34.  Swartz explained a new executive director was hired; Swartz's position was to move to Klamath Falls; and Swartz would have moved if "they would continue on with my flexible work station, and they were not able to do that."  Tr. 35.  Swartz testified he could only sit and stand for short periods of time, and his ability to drive distances was limited.  Swartz noted the prior executive director had allowed Swartz to go home during the day to lay down and to do home traction whenever it was necessary.  Swartz also asserted his condition worsened during the summer of 1997 when he had to lay in bed with 90/90 traction to take pressure off of his back about three times a day for 1-3 hours at a time.  Tr. 38.

Swartz testified standing increased his back pain the most; he could sit for about a half an hour at a time; and it was very difficult for him to drive. Swartz explained he used ice and a home-traction device for his back pain. Tr. 43-44.

**3.    Administrative Hearing on February 2, 2004**

On stipulated remand, ALJ Madden conducted a second administrative hearing. Scott Linder, M.D., testified by teleconference as a medical expert. Dr. Linder reviewed the medical records and testified he had no disagreement with any doctor on the diagnoses or findings. Tr. 336. Dr. Linder concluded Swartz was "capable of doing full-time, sedentary level of work with avoidance of repetitive or stressful activities to the low back and avoidance of lifting in excess of about 25 to 30 pounds" between February 1995 and December 1997. Tr. 336. Dr. Linder agreed Swartz had "an extensive epidural . . . fibrosis," which can be "a pain-generating condition." Tr. 338-39. Dr. Linder testified he had no way of proving or disproving Swartz's reports of chronic pain in the medical records, but he concluded "[Swartz's] description of pain and limitation certainly seems to far exceed any of the objective findings that have ever been reported in the records that I've been able to review." Tr. 341.

Swartz testified his condition was "pretty much the same

. . . [i]t's progressive . . . [s]o it gets worse."  Tr. 347.
Swartz testified he could do something around the house for a
couple of hours on a good day.  "On bad days I basically just
stay down, ice my back, take anti-inflammatory, and basically
muscle relaxers."  Tr. 348.  Swartz also testified he had "muscle
spasm in the back and then it's this pain down my leg, and it's
just a very intense sensation of pressure and this aching pain
like a toothache."  Tr. 348.

The ALJ propounded a hypothetical question to the VE based
on the RFC to perform the full range of sedentary work:  lifting
between 15 and 20 pounds; standing or walking for two hours
and sitting for six hours out of an eight-hour work day; having
the opportunity to change positions a little bit; not having
any detailed or complex written instructions; working in a
competitive work setting and schedule; and working with a normal
tolerance for attendance, absences, and breaks.  The VE
identified the following occupations that existed in significant
numbers in the national and regional economy as feasible:
telephone answering-service operator, telemarketer, and
circulation clerk.  Tr. 366-67.  The VE testified a limitation of
five hours a day at sedentary employment was less than
competitive employment and missing 5-10 days per month and lying
down periodically during the day would preclude any kind of
employment.  Tr. 367-68.

## STANDARDS

A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews*, 53 F.3d at 1039.  The Court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c)).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d). The criteria for the listed impairments known as Listings are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's RFC.  The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. § 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the residual functional capacity to perform work he has done in the past. *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R. § 416.920(e),(f).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141-42.  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(f)(1).

## DISCUSSION

Swartz contends the ALJ failed to give proper weight to the testimony of Dr. Dunn, Swartz's treating physician, and failed to provide legally adequate reasons for rejecting Swartz's pain testimony. The Commissioner contends the ALJ properly evaluated the medical evidence and found Swartz's testimony regarding his limitations was not totally credible.

Although the ALJ concluded Swartz's lumbar disc disease was a severe impairment before the expiration of his insured status on December 31, 1997, the ALJ found this impairment did not meet or equal impairments listed in the regulations. Tr. 197. The ALJ also found "on the last date insured [Swartz] retained the residual functional capacity to perform the exertional demands of sedentary work, or work which required maximum lifting of ten pounds, and which allowed for sitting with occasional standing and walking activities, and allowed the opportunity to change positions at will." Tr. 201. Based on this RFC, the ALJ concluded Swartz was unable to perform his past relevant work as he had performed it before December 31, 1997. The burden then shifted to the Social Security Administration to show there are other jobs that exist in significant numbers in the national economy that Swartz can perform consistent with his RFC. Tr. 201. Based on the VE's testimony, the ALJ concluded Swartz was able to perform jobs prior to December 31, 1997, that existed

in significant numbers in the national and regional economy.  Tr. 203.

**1.  <u>Opinion of Dr. Dunn</u>**

The ALJ noted Swartz's treating physician, Dr. Dunn, limited Swartz to the following restrictions as to employment:  "a subsedentary level on a part time basis"; "a work schedule which allowed him to alternate between sitting and standing and to lie down periodically during the day to reduce his pain"; and a work schedule that would allow him to "miss 5-10 days a month due to his chronic pain."  Tr. 199.  The ALJ, however, concluded:

> The opinion letters signed by Dr. Dunn on January 26, 1999 and January 30, 2004 (apart from a mere five year interlude between opinions) are not consistent with the record as a whole for the period prior to December 31, 1997, and, in both instances, appear to be largely based upon claimant's subjective complaints despite generally benign clinical and laboratory studies and his admitted ongoing efforts to find employment prior to December 31, 1997.

Tr. 200.

Swartz contends the ALJ failed to give the opinion of Dr. Dunn, Swartz's treating physician, the weight required by law and gave greater weight to the opinion of Dr. Linder, a nonexamining physician.  Swartz contends the ALJ's reasons for rejecting Dr. Dunn's opinion do not meet the required standard of specific and legitimate reasons supported by substantial evidence in the record.  The Commissioner, on the other hand, contends the ALJ properly rejected Dr. Dunn's opinion on the grounds that his

19 - OPINION AND ORDER

assessment is inconsistent with the record as a whole for the period prior to December 31, 1997; is based on Swartz's subjective complaints despite generally benign clinical and laboratory studies; and is inconsistent with Swartz's efforts to find employment prior to December 31, 1997.

Generally a treating physician's opinion is afforded the greatest weight in disability cases because the treating physician is employed to cure the patient and has the best opportunity to know and to observe the patient as an individual. *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993). A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 416.927(d)(2). The ALJ can reject the treating physician's opinion in favor of the conflicting opinion of another treating or examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The Court finds the evidence in the record does not support the ALJ's conclusion that Dr. Dunn formed his opinion based merely on Swartz's subjective complaints. The medical records

reflect Dr. Dunn and his associates at the Pain Center examined and treated Swartz on a regular basis from 1997 through 2004 for persistent back and leg pain. Dr. Dunn had first-hand knowledge of Swartz's condition over an extended period, and Dr. Dunn's findings and conclusions were supported by objective medical tests affirmed by the evaluation and testing of other physicians at the Pain Center.

The medical records include Dr. Dunn's radiology report dated November 13, 1997, in which he noted "[p]ostoperative laminotomy and foraminotomy at L5-S1, stable, with progressive degenerative changes." Tr. 140. On April 21, 1998, Dr. Dunn reviewed Swartz's MRI, reported evidence of extensive epidural fibrosis, and concluded "[t]here is definitive evidence of progression." Tr. 131. Dr. Hofstetter of Southern Oregon Imaging read the same MRI and reported the same results. Tr. 139. Dr. Dunn also had the benefit of a PCE administered by a physical therapist at the Pain Center and reviewed the results of the examination with Swartz. Tr. 133.

Contrary to the ALJ's conclusion that Dr. Dunn's opinion was "largely based upon claimant's subjective complaints despite generally benign clinical and laboratory studies," Tr. 200, Dr. Dunn had first-hand knowledge and objective evidence of the deteriorating condition of Swartz's spine at L5-S1, which formed the basis for Swartz's complaints of pain. The Court, therefore,

finds Dr. Dunn's evaluation of Swartz's functional limitations are supported by substantial evidence in the record.

By contrast, the Dr. Linder's opinion at the administrative hearing, which the ALJ used to determine Swartz's RFC, is not supported by substantial evidence in the medical records. Dr. Linder testified at the administrative hearing as a non-examining medical expert by teleconference based entirely on a review of Swartz's medical records. Dr. Linder testified he had no particular disagreement with any doctor in the record as to diagnoses or findings; Swartz had "extensive epidural . . . fibrosis," which can be a "pain-generating condition"; and, in his opinion, Swartz's reports of pain far exceeded any objective findings. Tr. 338-39. Dr. Linder also testified he had "no way of proving [] or disproving" Swartz's reports of chronic pain in the medical records. Tr. 341. The ALJ did not give any specific or legitimate reason for accepting the testimony of Dr. Linder and rejecting the opinions of Dr. Dunn and his associates at the Pain Clinic, which are consistent throughout Swartz's medical records.

To the extent the ALJ relied on Dr. Newby's opinion dated February 11, 1997, that Swartz "can be involved in medium work activity with no lifting over 50 lbs.," this opinion was specifically rejected by Dr. Dunn and is not supported by any other evidence in the medical record. Tr. 124. Even Dr. Linder

limited Swartz to sedentary work lifting no more than 25-30 pounds.  Tr. 336.

Contrary to the ALJ's assertion that Dr. Dunn's opinion was based solely on Swartz's subjective complaints, the record reflects Dr. Dunn's opinion was based on years of first-hand examinations, reviewing x-rays and MRIs, and consistent reports and conclusions from other physicians at the Pain Center.

The Court, therefore, finds the ALJ's reference to Swartz's "admitted ongoing efforts to find employment prior to December 31, 1997," Tr. 200, is not a legally sufficient reason to reject Dr. Dunn's opinion.

Dr. Dunn also noted Swartz was "unable to be employed because of the persistence of his pain and aggravation of it by any type of employment."  Tr. 160.  The fact that Swartz kept looking for employment that would accommodate his limitations, however, does not establish Dr. Dunn overstated Swartz's limitations.

In summary, this Court finds the ALJ erred because his reasons for rejecting Dr. Dunn's opinions and conclusions as to Swartz's limitations are not specific or legitimate and are not supported by substantial evidence in the record.

2.  **Swartz's Testimony**

The ALJ found:

> With respect to the credibility of the claimant's
> subjective pain complaints and his impairment and

the impact of his impairment on his ability to
work on the date his insured status expired, and
viewing the record as a whole, the undersigned
finds claimant is less than entirely credible.
Although the medical evidence does demonstrate a
history of treatment for back and lumbar
complaints after 1977, it is clear that the
claimant continued to function, continued to work,
continued to complete higher degree programs as
well as vocational and technical training prior to
his date last insured (DLI).  He has steadfastly
maintained his ability to work at the sedentary
level and reported his ongoing efforts to keep
working or seek work at that very level.  While it
may be suggested that his condition has worsened,
it is evident that the deterioration has taken
place long after his DLI.  The undersigned
recognizes the longitudinal history, but this is
balanced by the fact that the claimant's
complaints were inconsistent with the clinical and
laboratory studies prior to (and since) December
31, 1997.

Tr. 200-01.

"Unless there is affirmative evidence showing that the

claimant is malingering, the Commissioner's reasons for rejecting

the claimant's testimony must be 'clear and convincing.'" *Lester

v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)(quoting *Swenson v.

Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  If "the claimant

produces medical evidence of an underlying impairment, the

Commissioner may not discredit the claimant's testimony as to

subjective symptoms merely because they are unsupported by

objective evidence."  *Id.*

In this case, the record does not reflect any evidence of

malingering, and the evidence of an underlying impairment of

lumbar disc disease is sufficient to cause Swartz's alleged

symptoms prior to his date last insured. The ALJ, therefore, was required to provide clear and convincing reasons for rejecting Swartz's pain complaints and their impact on his ability to work prior to his date last insured.

Swartz testified he could only sit and stand for short periods, and his condition worsened in the summer of 1997 when he had to lay in bed in traction to take pressure off his back. The ALJ rejected Swartz's testimony of pain on the grounds that Swartz's condition worsened long after his date last insured, that he continued to work after his back injury in 1977, and that he continued to look for work after his last employment in 1995.

The Court, however, finds there is substantial evidence in the record to support Swartz's testimony that his condition worsened and that he could only sit and stand for short periods prior to December 31, 1997, his date last insured. In April 1995, Dr. Newby noted Swartz "would have a difficult time continuing in his job" at the health center which was at most sedentary. Tr. 129. On January 13, 1997, Dr. Newby noted an acute worsening of [Swartz's] low back pain." Tr. 125. Swartz returned to Dr. Dunn at the Pain Center in October 1997, and the subsequent PCE "gave him a 15-20 pound lifting limit with about 5 hours of continuous work." Tr. 133. The x-ray report dated November 13, 1997, showed "progressive degenerative changes." Tr. 140. The Court, therefore, finds the ALJ's conclusion that

"the deterioration ha[d] taken place long after his [date last insured]" is not supported by the evidence in the record.  Tr. 201.

Finally, this Court finds the fact that Swartz continued to be "motivated to work" after his date last insured even though he was not able to find employment suitable to his limitations does not provide a clear and convincing reason for the ALJ to reject Swartz's testimony.  Tr. 136.  There is ample evidence in the record to show Swartz's back pain "progressively worsened" after 1995 when he last worked in a sedentary position.  Tr. 160. While there is some evidence in the record that Swartz continued to seek a position suitable to his limitations after his date last insured, there is not any evidence that he retained the RFC to perform jobs that existed in significant numbers in the national and regional economy.  The Court, therefore, finds the ALJ erred when he failed to provide clear and convincing reasons for rejecting Swartz's testimony.


## <u>REMAND FOR DETERMINATION OF BENEFITS</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989). An immediate award of benefits is also appropriate when the ALJ has failed to provide legally sufficient reasons for rejecting evidence and there are no outstanding issues that must be resolved before a determination of disability can be made if the evidence is credited as true. *Harman*, 211 F.3d at 1178 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). The "crediting as true" doctrine is not a mandatory rule, but it allows the Court the flexibility to exercise its discretion in formulating an appropriate remand order. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003).

In this case, the Court concluded the ALJ did not provide legally sufficient reasons to reject the opinions of Swartz's treating physician or to reject Swartz's testimony. Giving this evidence the effect required by law, the Court concludes Swartz has established on this record that he could not sustain work-related activities on a regular and continuing basis due to the impact of his lumbar disc disease on his ability to work prior to his date last insured. The Court, therefore, finds the Commissioner has not carried her burden to prove there were jobs existing in significant numbers in the national economy that Swartz could perform prior to December 31, 1997. Accordingly, the Court concludes Swartz is disabled as of the amended onset date of July 1, 1997, and, therefore, further administrative proceedings would not serve any useful purpose.

## CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's final decision and **REMANDS** pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 2nd day of May, 2005.


      /s/ Anna J. Brown
          ANNA J. BROWN
          United States District Judge